## Case No. 11,017.

### The PERSEVERANCE.

[Blatchf. & H. 385.] [1]

District Court, S. D. New York. July 5, 1833.

ADMIRALTY JURISDICTION—CONTRACTS TO BE PERFORMED AT SEA — MONEY ADVANCED TO PURCHASE SHIP—BILL OF SALE—HYPOTHECATION.

1. A contract, in order to be within the jurisdiction of admiralty, must be one which is to be performed upon the sea, or which has relation to a maritime service.

[Cited in Wenberg v. Cargo of Mineral Phosphate, 15 Fed. 287, 288.]

2. Where money was advanced to purchase a ship, and her bill of sale was deposited with the lender, by way of security, with a power of attorney to him to sell the ship for his reimbursement: Held, that such a contract was not cognizable in admiralty.

[Cited in Wenberg v. Cargo of Mineral Phosphate, 15 Fed. 287, 288.]

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

3. The party holding such bill of sale, acquired, by its delivery to him, no hypothecation of the vessel or interest in her, enabling him to maintain a petitory or possessory action. He took only a naked power to sell, which did not amount to a pledge in præsenti.

4. Admiralty cannot give relief by converting such contract into a hypothecation, nor does such contract carry with it any of the ingredients of a lien, either express or implied.

This was a libel in rem, against the brig Perseverance. The libel set forth that the libellant advanced $4.500 to one Thompson, at his request, to enable him to purchase the brig, and, on the purchase, took from him, as security, the bill of sale executed by the former owners to Thompson, and also a power of attorney constituting the libellant the irrevocable attorney of Thompson, to transfer the vessel by a bill of sale; that an indenture was at the same time entered into between the libellant and Thompson, by which it was agreed that if Thompson should repay the libellant. on demand, the sum advanced by him, then the power of attorney should be delivered up, otherwise, the libellant should have full power to dispose of the vessel, to repay himself for his advances and expenses, subject to an account for the remainder; and that the vessel remained in the possession of Thompson, and was navigated by him, and the freight was appropriated to the repayment of the advances made by the libellant. The libel then alleged. on information, a sale of the vessel by Thompson to one Higbee, and that Thompson was about to depart in the vessel, and concluded with the usual prayer for the arrest and sale of the vessel, &c. The claim and answer of Higbee excepted to the jurisdiction of the court, and alleged a bona fide purchase of the vessel by him from Thompson, and that the libellant had shown no property in the vessel, or lien upon her.

Francis B. Cutting, for libellant.
Daniel Lord, Jr., for claimant.

BETTS, District Judge. The essential requisite of a contract, to bring it within the jurisdiction of an admiralty court, is, that it must be one which is to be performed on the high seas, or which has relation to a maritime service. The most enlarged interpretation of the term "maritime," as applied to the jurisdiction of this court, has not been extended beyond subjects or engagements which are necessarily connected with services to be rendered on tide waters; or supplies furnished to vessels in aid of a voyage; or labor, or materials, or cash advanced to obtain such supplies; or loans on hypothecation, subject to the event of a voyage, or payable at the end of the voyage; or questions directly touching the right of possession or ownership of ships. De Lovio v. Boit [Case No. 3,776]; Plummer v. Webb [Id. 11,233]; Andrews v. Essex Fire & Marine Ins. Co. [Id. 374]; The Mary [Id. 9,187]; The Tilton [Id. 14,054]; Drinkwater v. The Spartan [Id. 4,085]. Although it is difficult to discern any principle which distinguishes one kind of water, adapted to general navigation, from another, yet the adjudged cases and elementary writers regard the particular of tide water as an essential element to the jurisdiction of admiralty. The undertaking upon which this libel is founded partakes of a maritime character, in the usual acceptation of the term, in no other respect than that the loan of money thereby sought to be secured was made with the view of aiding the borrower in the purchase of the brig now arrested, and with the expectation that her earnings at sea would enable him to repay the loan. The vessel could not be hypothecated or mortgaged to the libellant at the time of the loan, because she was not then owned by him; and the question, whether the libellant can, as mortgagee, have a remedy in this court in rem, does not arise. The depositing, afterwards, with the libellant, of her bill of sale, transferred no title to the vessel, and could not affect the right of the actual owner in possession to make sale of her, with full title, to another. The plain purpose of the whole transaction was, to make sure a power of disposal in the libellant over the vessel, through which his debt might be collected, and not to vest the ownership of her in him. The vessel thus becomes connected with the contract only by means of a special power of attorney, given by the owner to the libellant, to sell the brig and repay himself out of her proceeds. He had no higher title than that of agent or ship-broker. The instrument imparted to him merely a naked power, and vested in him no interest in the vessel (Hunt v. Rousmaniere, 8 Wheat. [21 U. S.] 174; Id., 1 Pet. [26 U. S.] 1), and, accordingly, would not enable him to maintain this suit, in the character of owner, to obtain possession of her, even from Thompson, much less from his vendee. Nor did it give him any right of possession or control over the vessel, nor more than the authority to make sale of her to others, whilst she continued the property of his debtor. The libellant, therefore, has not the capacity of maintaining a petitory or possessory action for the recovery of the vessel from her purchaser, nor any action in rem in this court to try the right of ownership of the claimant, under the sale of her to him by her prior owner, the debtor of the libellant.

I do not consider the agreement between the libellant and Thompson as a maritime contract. It is merely personal between the parties. It was entered into in port, and had relation to a transaction entirely on land. Whether the money loaned was applied in purchase of the vessel, or of her cargo, or of any other merchandise, the security of the lender would have been the same. That security was not made dependent upon the manner in which the money was used, and the lender could not, in this court, follow the

money as a thing in which he had a continuing interest. If such an interest might be supposed to subsist, the money, or its avails, could be reclaimed only by the aid of a court of chancery.

Independently of the authority given by the power of attorney, the libellant could not, at law or in chancery, exact his reimbursement out of the subject to which the money was applied. And, under the contract, he can be reimbursed only in the mode provided by its terms (Hunt v. Rousmaniere. 8 Wheat. [21 U. S.] 174; Id., 1 Pet. [26 U. S.] 1), that is, by selling the vessel under his power of attorney. To give effect to the agreement as an incumbrance on the vessel, the creditor must obtain the decree of a competent court, converting the contract into a mortgage or pledge. That relief cannot be had in a court of admiralty, which possesses no power to change a written agreement, or to compel one to be executed conformably to equity and to the understanding of the parties. Andrews v. Essex Fire & Marine Ins. Co [supra]. This court affords its peculiar relief, by holding in pledge the thing which ought to indemnify a party. only when there is a lien, express or implied, upon the thing itself. I cannot perceive that these funds, which were advanced to aid in the purchase of a vessel, acquired a character differing from an ordinary lending of money, so as to be entitled to claim the privilege of a maritime loan. The libel is, accordingly, dismissed, with costs.